# 96 DTA 100

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE PONCE Y AIBONITO**
**PANEL I**

COOPERATIVA DE AHORRO Y CREDITO DE LAS
ASOCIACIONES PARROQUIALES DE VILLALBA
Demandantes-Recurridos

v.

WILLIAM FIGUEROA TORRES, JANE DOE Y LA SOCIEDAD
LEGAL DE GANANCIALES POR ELLOS COMPUESTA
Demandados-Recurridos

EVELYN REYES BONILLA, COOPERATIVA DE AHORRO Y CREDITO
DE VILLALBA Y SU COMPANIA ASEGURADORA X
Terceros Demandados

Núm. KLCE-95-00563

San Juan, Puerto Rico, a 23 de abril de 1996

Panel integrado por su presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante el presente recurso de *certiorari* la parte peticionaria y tercera demandada, Cooperativa de Ahorro y Crédito Villalba Credit Union (en adelante Villalba Credit Union), nos solicita que revoquemos una resolución dictada en corte abierta por el Tribunal de Primera Instancia, Sub-Sección de Distrito, Sala De Juana Díaz, la cual declaró no ha lugar una moción de desestimación presentada por la peticionaria fundada en la alegada falta de parte indispensable.

Evaluados los señalamientos de las partes, resolvemos que no le asiste la razón a la peticionaria, por lo que expedimos el recurso y confirmamos la determinación del tribunal recurrido.

## I

El 24 de junio de 1994 la peticionaria Villalba Credit Union, expidió el cheque número 12275 por la suma de $2,189.23 a favor de la Sra. Evelyn Reyes Bonilla, por concepto de un dinero tomado a préstamo por ésta. La señora Reyes Bonilla endosó el referido cheque y se lo entregó al señor William Figueroa Torres, quien también endosó el mismo. ■ El 28 de junio de 1994, el señor Figueroa Torres hizo efectivo el cheque en la Cooperativa de Ahorro y Crédito de las Asociaciones Parroquiales de Villalba, demandante en el pleito de epígrafe y en lo sucesivo Cooperativa de Parroquiales.

El 29 de junio de 1995, la señora Reyes Bonilla se presentó a la Villalba Credit Union y solicitó la suspensión del pago del referido cheque aduciendo la cancelación de un contrato que ella había realizado. Los fondos de la cuenta contra la cual Villalba Credit Union giró el cheque se encuentran depositados en una cuenta en el Banco Popular de Puerto Rico, sucursal de Villalba, en adelante Banco Popular. Villalba Credit Union solicitó al Banco Popular la suspensión del pago del cheque por las mismas razones alegadas por la señora Reyes Bonilla. El 29 de junio el Banco Popular ordenó la suspensión de pago del cheque, la cual se hizo efectiva el 30 de junio de 1994, según surge de la orden a esos efectos emitida por el banco.

En dicha orden el Banco Popular hace constar que: *"no será responsable en forma alguna al endosante del antes mencionado cheque por razón de la Suspensión de Pago de Cheque aquí solicitada. El depositante se obliga a indemnizar al Banco de cualquier reclamación por parte del endosante y conviene, además, que el Banco no será en modo alguno responsable al depositante, en el caso de que se procediera al pago del mencionado cheque, no obstante la Suspensión de Pago de Cheque solicitada, siempre que dicho pago se efectuara inadvertida o accidentalmente"*.

El 30 de junio de 1994, la Cooperativa de Parroquiales presentó al cobro el cheque objeto de esta controversia al banco librado, Banco Popular, quien se negó a pagarlo por razón de la orden de suspensión de pago dada por el librador del cheque, la Villalba Credit Union. Así las cosas, el 14 de septiembre de 1994 la Cooperativa de Parroquiales instó demanda contra el señor Figueroa Torres por razón de que no había podido hacer efectivo el cheque que había sido cambiado a favor del demandado, habida cuenta que se había suspendido el pago del mismo.

Posteriormente, el 3 de noviembre de 1994, el demandado Figueroa Torres presentó demanda contra tercero contra Reyes Bonilla, la Villalba Credit Union y su compañía aseguradora. Allí se alega que Reyes Bonilla de forma ilegal y maliciosa, solicitó que se suspendiera el pago del cheque a pesar de haberlo endosado, lo que provocó que la Villalba Credit Union suspendiera el pago. Además, se aduce que no procedía que la Villalba Credit Union suspendiera el pago del referido cheque pues era un instrumento negociable que había sido endosado a un tercero inocente. Sostiene que por estos motivos son los terceros demandados quienes responden directamente a la demandante por el pago de la suma que consta en el cheque y solicita daños ascendentes a $25,000.

En la contestación a la demanda contra tercero, la co-demandada Villalba Credit Union alegó que había actuado correctamente al no hacer efectivo el cheque que se presentó para su cobro y el cual es objeto de la presente controversia, ya que el mismo estaba a nombre de la persona que solicitó su paralización, la señora Reyes Bonilla. Además, adujo que el cheque contenía un endoso restrictivo, por lo que no era un instrumento negociable. Expuso, además, que no existe relación causal entre los daños alegados por el demandado y la actuación de la Villalba Credit Union. Por su parte, la otra parte tercera demandada, la señora Reyes Bonilla, niega en su contestación a la demanda prácticamente

todo lo alegado por el demandado Figueroa Torres y sostiene que la demanda deja de exponer una reclamación que justifique la concesión de un remedio.

El 29 de marzo de 1995, la parte demandante, Cooperativa de Parroquiales, solicitó sentencia sumaria parcial y/o sentencia por las alegaciones. El 2 de mayo de 1995 la tercera co-demandada Villalba Credit Union radicó moción de desestimación de la demanda alegando falta de parte indispensable en el pleito. Entiende la tercera demandada que el Banco Popular era parte indispensable en el pleito, ya que fue el Banco quien realmente suspendió y negó el pago del cheque objeto de la controversia. El Tribunal de Primera Instancia dejó pendiente para resolver la moción de desestimación hasta la celebración de una vista que fue pautada para el 21 de junio de 1995. El 1 de junio de 1995 el Tribunal de Primera Instancia, Sub-Sección de Distrito, Sala de Juana Díaz, dictó sentencia sumaria parcial a favor de la parte demandante y ordenó a la parte demandada a satisfacer la suma de $2,189.93, además de las costas, intereses y la cantidad de $1,200.00 en honorarios de abogado. Posteriormente, en la vista celebrada el 21 de junio de 1995 para resolver la moción de desestimación presentada por la tercera demandada Villalba Credit Union, el Tribunal, en corte abierta, la declaró no ha lugar por entender que el Banco Popular no era parte indispensable en el pleito y que el asunto planteado había sido resuelto cuando se dictó sentencia sumaria parcial el 1 de junio de 1994.

De la resolución en cuestión acude ante nos la peticionaria Villalba Credit Union, mediante petición de *certiorari*, solicitando su revocación por entender que erró el tribunal recurrido al no dictaminar que el Banco Popular no era parte indispensable en el pleito. Este Tribunal le concedió a las partes recurridas diez (10) días para que mostraran causa por la cual no debía revocarse la resolución recurrida. Las partes han comparecido. La parte demandante Cooperativa de Parroquiales, en su oposición a la petición de *certiorari*, alega que la tercera demandada Evelyn Reyes Bonilla solicitó la suspensión del pago del cheque a través de la Villalba Credit Union y que como parte de esta solicitud se relevó al Banco Popular de cualquier responsabilidad, por lo cual el Banco no es parte indispensable en el litigio. Por su parte, el demandado-recurrido William Figueroa Torres, alega que surge claramente del documento sobre suspensión de pago que las partes convinieron que el Banco Popular no sería responsable en forma alguna al endosante del cheque por razón de la suspensión de pago, por lo que dicho planteamiento no debe prevalecer.

## II

Antes de disponer de la cuestión que nos ocupa, a saber, si el Banco Popular es parte indispensable en el presente pleito, es preciso examinar las disposiciones de ley, la jurisprudencia aplicable y las interpretaciones que los tratadistas han ofrecido sobre este asunto.

El cheque constituye una letra de cambio girada contra un banco y pagadera a su presentación. Artículo 358 del Código de Comercio de 1932, 19 L.P.R.A. sec. 362. Es decir, un librador da una orden incondicional al banco librado para que éste pague a su presentación cierta suma de dinero a la orden o al portador. *A.E.E. v. Las Américas Trust Co.,* 123 D.P.R. 834, 839 (1989). El vínculo entre el librador del cheque y su banco no surge cuando se expide el cheque, ya que éstos han quedado previamente vinculados mediante el establecimiento de una cuenta corriente contra cuyos fondos se hacen efectivas las órdenes de pago del librador. *Id.*

La cuenta corriente se caracteriza como un contrato de préstamo mediante el cual el banco queda obligado a pagar o restituir lo que se ha pagado en calidad de préstamo, según la orden de su cliente. *A.E.E. v. Las Américas Trust. supra,* a la pág. 841; *P.R. Tobacco Mkt. Ass'n. v. Amer. Ins.,* 100 D.P.R. 387, 397 (1972); *Portilla v. Banco Popular,* 75 D.P.R. 100, 113 (1953). En *P.R. Tobacco Mkt. Ass'n v. Amer. Ins., supra*, el Tribunal Supremo enfatizó que: *"Las obligaciones de los bancos para con sus depositantes surgen de la relación contractual existente entre ellos. El banco le es responsable a su depositante cuando hace pagos en violación de las instrucciones de éste".*

La orden de suspensión de pago es una instrucción que el titular de una cuenta bancaria da a la institución en la que tiene su cuenta de que no honre el pago de un cheque que ha sido expedido y puesto en circulación. Luis Mariano Negrón Portillo, Derecho Cambiario de Puerto Rico (Instrumentos Negociables), 1995, pág. 130.

En cuanto a los derechos del tenedor de un cheque con relación al banco librado, el Artículo 542 del Código de Comercio de 1932, 19 L.P.R.A. sec. 542, dispone que: *"El cheque por sí mismo no surte el efecto de cesión de cantidad alguna de los fondos existentes en el banco al crédito del librador, y el banco no será responsable para con el tenedor, a menos y hasta tanto que acepte o certifique el cheque".* ■ Así nos lo explica con mayor claridad el Profesor Basilio Santiago Romero en su obra sobre instrumentos negociables: *"[e]l tenedor de un cheque no puede forzar al banco librado a pagar el mismo, a menos que el banco lo haya certificado. Si el banco librado rehúsa pagar el cheque, el tenedor puede recurrir únicamente contra el librador y los endosantes, ya que la función del cheque no constituye una cesión de intereses. Considerando la naturaleza del contrato entre el banco y el depositante, el tenedor del cheque no posee interés alguno en dicho contrato. El banco únicamente responde ante el depositante con quien acordó recibir sus depósitos de hacer honor a sus cheques y de rendirle cuenta. Si el banco no paga o incurre en incumplimiento del contrato con el depositante, su responsabilidad es hacia él y no hacia el tenedor del cheque."* (citas omitidas y énfasis nuestro). Basilio Santiago Romero, Tratado de Instrumentos Negociables, 2da. ed., San Juan, Ed. Universitaria, 1981, a la pág. 349.

La ley establece las instancias en las cuales el banco librado le responde al tenedor del cheque por el pago del mismo, dependiendo de si el banco lo ha aceptado o certificado. Si el cheque es certificado o aceptado por el banco, ■ ello tiene el efecto de relevar de responsabilidad al librador y todos los endosantes, y el tenedor del cheque puede dirigirse directamente al banco librado para cobrar el importe del mismo, porque la certificación del cheque saca los fondos especificados en el mismo fuera del control del librador y los pone a disposición del tenedor del cheque. *Berríos v. International* 88 D.P.R. 109, 119 (1963). Artículos 540 y 541 del Código de Comercio, 19 L.P.R.A. secciones 364 y 365. ■

### III

Por todo lo anteriormente expuesto, entendemos que el Banco Popular no es parte indispensable en el presente pleito, toda vez que no había aceptado ni certificado el cheque objeto de la presente controversia.

La Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16.1, establece que *"las personas que tuvieren un interés común sin cuya presencia no puede adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandados según corresponda... "* Por su parte la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10.2, provee como fundamento para desestimar la demanda el que no se haya incluido una parte indispensable en el pleito.

El Banco Popular no es una parte sin cuya presencia no pueda adjudicarse la controversia planteada en el pleito ante la consideración del Tribunal de Primera Instancia, la cual se circunscribe a determinar quién le responde a la demandante-recurrida Cooperativa de Parroquiales, tenedor del cheque, por el pago del mismo. Es importante recalcar que lo que nos corresponde evaluar es si el Banco Popular puede ser responsable al tenedor del cheque, de manera que sea imprescindible que se acumule en el pleito como parte indispensable. ■ Carece de méritos la contención de la peticionaria y tercera demandada de que el Banco Popular es quien le responde a los demandantes por haber sido el Banco quien realmente suspendió el pago del cheque.

Ha quedado establecido que a menos que el banco librado haya aceptado o certificado el cheque, no le responde al tenedor por el pago. El tenedor del cheque, en las circunstancias específicas de este caso, tiene que recurrir directamente contra el librador y los endosantes para cobrar ya que el Banco Popular no había aceptado o certificado el cheque. La Cooperativa de Parroquiales, demandante y tenedora del cheque objeto de la controversia, fue directamente donde el último endosante del mismo a requerirle el pago. Por su parte, el demandado y último endosante del cheque, William Figueroa Reyes a su vez presentó demanda contra tercero contra el librador del cheque, Villalba Credit Union, y contra la beneficiaria y endosante del mismo, Evelyn Reyes, quienes también pueden responderle directamente a la demandante Cooperativa de Parroquiales. La Cooperativa de Parroquiales no podía requerirle el pago directamente al Banco Popular, ya que según nos explica correctamente el tratadista Basilio Santiago Romero *"[s]i el banco librado rehúsa pagar el cheque, el tenedor puede recurrir únicamente contra el librador y los endosantes...".*

Por lo tanto, como el tenedor del cheque, la Cooperativa de Parroquiales, no tiene interés alguno en el contrato existente entre el librador del cheque, Villalba Credit Union, y el banco librado, Banco Popular, ésta no tiene que traer al banco librado al pleito para que le responda. El endosante y tercero demandante, William Figueroa, tampoco tiene que incluir como demandado al Banco Popular, debido a que éste tampoco tiene relación contractual alguna con el banco librado. Son los endosantes y el librador los que le responden directamente a la Cooperativa de Parroquiales.

La relación entre el Banco Popular y la Villalba Credit Union es una relación contractual. El Banco Popular no incumplió con su deber al negarle el pago a la Cooperativa de Parroquiales. El Banco sólo le responde al depositante de hacer honor a sus cheques y de rendirle cuentas. En el caso ante nos, fue el propio librador quien le ordenó al banco librado la suspensión del pago del cheque, y por esta razón fue que el Banco le negó el pago al tenedor del cheque. La orden de suspensión de pago es una instrucción del depositante o librador al banco para que no honre el pago de un cheque que ya ha sido expedido. En consecuencia, el Banco Popular actuó correctamente, ya que siguió las órdenes que a esos efectos le emitió la Villalba Credit Union. La posición de la peticionaria Villalba Credit Union es muy endeble porque fue a su instancia, precisamente, que el pago fue suspendido. Como ya vimos, sólo podría atribuírsele responsabilidad al Banco si hubiese pagado el cheque luego que se había ordenado su suspensión.

Concluimos que no habiendo relación contractual alguna entre el Banco Popular, la Cooperativa de Parroquiales y el Sr. William Figueroa Reyes, el Banco no es parte indispensable en el litigio y, por ende, no es necesario que se incluya como parte demandada en el pleito.

**IV**

Por los fundamentos expresados anteriormente, se expide el auto de *certiorari* solicitado y se confirma la resolución recurrida del Tribunal de Primera Instancia, Sub-Sección de Distrito, Sala de Juana Díaz, declarando No Ha Lugar la Moción de Desestimación presentada por la peticionaria Villalba Credit Union.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

**ESCOLIOS 96 DTA 100**

**1.** El Sr. William Figueroa Torres alega que el 26 de junio de 1994 le vendió a la Sra. Evelyn Reyes Bonilla un automóvil en pago del cual ésta le entregó el mencionado cheque por la suma de $2,189.23. La Sra. Evelyn Reyes Bonilla niega este hecho en la contestación a la demanda contra tercero instada en su contra por William Figueroa.

**2.** El tenedor es la persona natural o jurídica que tiene en su poder un documento negociable y a cuyo beneficio ha de hacerse el pago. Artículo 453 del Código de Comercio, 19 L.P.R.A. sec. 381; Basilio Santiago Romero, *supra*, a la pág. 161.

**3.** El cheque certificado está librado por un depositante contra fondos suyos en un banco, certificando el banco que será pagadero cuando sea presentado para su pago. La presentación se hace a un oficial del banco, quien de aceptar su certificación le imprime un sello al cheque y así lo indica. Cuando el cheque es certificado la cuenta del librador sufre el cargo, reduciéndose por la suma del cheque. Basilio Santiago Romero, *supra*, a la pág. 350.

**4.** El Art. 540, 19 L.P.R.A. sec. 364, dispone:

*"Cuando se certificare un cheque por el banco contra el cual se ha librado, la certificación equivale a su aceptación."*

El Art. 541, 19 L.P.R.A. sec. 365, dispone:

*"Cuando el tenedor de un cheque obtiene su aceptación o certificación, el librador y todos los endosantes quedarán relevados de responsabilidad".*

Véase además, sobre la certificación de los cheques, a Luis Mariano Negrón Portillo, Derecho Cambiario de Puerto Rico (Instrumentos Negociables), a las págs. 128 y 129.

**5.** Este Tribunal no está en posición de decidir qué parte le responde a la Cooperativa de Parroquiales por el pago del cheque, pues no es éste el planteamiento que se nos presenta. Por tanto, tampoco tenemos que entrar a considerar si la Cooperativa de Parroquiales es o no tenedor de buena fe y cuáles defensas serían oponibles contra ésta.